UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
SATISH DESHPANDE, M.D.,

        Plaintiff,

        against

TJH MEDICAL SERVICES, P.C., MEDISYS
MANAGEMENT, LLC, MEDISYS HEALTH
NETWORK, INC., and THE JAMAICA HOSPITAL
MEDICAL CENTER; THOMAS SANTUCCI,
*individually and as an aider and abettor*; PAULINE
MARKS, *individually and as an aider and abettor*;
RICHARD PINSKER, *individually and as an aider and
abettor*; and SURENDRA MAHADEVIA, *individually
and as an aider and abettor*,

        Defendants.
-------------------------------------------------------------------X

MEMORANDUM & ORDER
05-CV-2894 (NGG)(VVP)

GARAUFIS, United States District Judge.

Defendants TJH Medical Services, P.C. ("TJH"); Medisys Management, LLC ("Medisys

Management"); Medisys Health Network, Inc. ("Medisys Health"); the Jamaica Hospital

Medical Center ("Jamaica Hospital"); Thomas Santucci, individually and as an aider and abettor;

Pauline Marks ("Marks"), individually and as an aider and abettor; Richard Pinsker ("Pinsker"),

individually and as an aider and abettor; and Surendra Mahadevia ("Mahadevia"), individually

and as an aider and abettor (collectively, "Defendants"), move to dismiss the complaint pursuant

to Fed. R. Civ. P. 12(b)(6) for failure to state a claim.  Plaintiff moves to amend his

discrimination claims.  For the reasons set forth below, Defendants' motion is GRANTED as to

Plaintiff's Fair Labor Standards Act ("FLSA") and Sherman Act claims, DENIED as to

Plaintiff's Title VII retaliation claim, and GRANTED in part as to Plaintiff's Title VII

discrimination claim for alleged activities that occurred before June 1, 2004.   I also dismiss this

action as against Dr. William O'Connell. Plaintiff's motion to amend his complaint is
GRANTED.

## I.  FACTUAL BACKGROUND

As this is a motion to dismiss under Fed. R. Civ. P. 12(b)(6), this recitation of the facts
shall presume the truth of all facts as alleged by the Plaintiff, and allow for all permissible
inferences in favor of Plaintiff's claims.

Plaintiff Satish Deshpane, M.D. ("Deshpande" or "Plaintiff") commenced his
employment with defendant Jamaica Hospital as a faculty supervisor in the Department of
Medicine in or around March 9, 1994. (Am. Compl. ¶ 7(a).) At that time, Plaintiff entered into
an employment contract with Jamaica Hospital specifying his employment for no less than forty
hours per week. (Id. ¶¶ 7(a), (b) and (d).) Plaintiff was informed that he had to utilize a daily
time card, work at least forty hours each week, and account for each hour that he worked on his
attendance sheets. (Id. ¶¶ 7(a)-(b).) Plaintiff was required to work on weekends, holidays and
weekends by Jamaica Hospital and Dr. Thomas Santucci, the Chairman of the Department of
Medicine, for which he was never paid overtime. (Id. ¶¶ 7(b), (c), and (i).) Plaintiff's contract
provided for automatic yearly renewal on the anniversary of his hire; however, Jamaica Hospital
terminated the contract on January 13, 1995, and Plaintiff was transferred to TJH Medical
Services, where he worked as an at-will employee. (Id. ¶¶ 7(d), (f), and (g).)

On or about May 29, 2001, several attending physicians at TJH Medical Services,
including Plaintiff, criticized management at TJH Medical Services for its perceived pattern and
practice of "selecting and promoting attendings and residents from [Gujarat,[1]] a distinct region of

---

[1] At various points, Plaintiff refers to people who originate from Gujarat as "Gujurati,"
"Gurjuranti," and "Gujarati." For consistency, I will utilize the term "Gujarati".

India which is culturally and linguistically distinct from others." (Id. ¶ 7(h).)  Subsequent to

Plaintiff's (and others') complaints, the Chairman of the Department of Medicine stated that

staff who complained about this preference for Gujaratis would not receive a raise and should be

fired.  Dr. William O'Connell, Dr. Santucci's deputy, stated that "something 'bad' may happen

to those who complain[.]"  (Id. ¶ 7(i).)  On or about June 16, 2001, Plaintiff complained to Dr.

Santucci about these actions.[2]  Plaintiff complained again to Dr. Santucci on or around August

26, 2002 and September 30, 2002, claiming that he was denied "promotional opportunities and

lucrative job assignments," based on his "creed," and because he is not Gujarati.  (Id. ¶ 7(k).)

Plaintiff also alleges that he criticized the preference of Gujarati staff to other "functionaries

within the Department of Medicine, the Jamaica Hospital and TJH Medical Services, P.C."  (Id.

¶ 7(l).)  Plaintiff claims that he was denied raises for as much as $50,000 annually because of the

Defendants' preference for Gujarati staff.  (Id. ¶ 7(k).)

　　　Furthermore, Plaintiff claims that in retaliation for his complaints about the Defendants'

preferential treatment of Gujarati staff, he was denied "significant promotional opportunities and

lucrative job assignments, and critically, termination of his employment relationship."  (Id. ¶

7(m).)  Plaintiff alleges that on October 25, 2002, he complained to Margaret Johnson, TJH's

Chief Corporate Compliance Officer and General Counsel, and Marks, TJH's Executive Director

about his department's preference for Gujarati staff and his unfavorable assignments and lack of

promotions caused by his complaints, and that Johnson and Marks suggested to Plaintiff that he

resign.  (Id. ¶ 7(n).)  On June 1, 2004, in July 2004, and on September 14, 2004, Plaintiff

---

[2] Plaintiff also alleges that on June 12, 2006, he complained to Dr. Santucci and the Department
of Emergency Medicine about emergency department physicians "dumping" patients on the
Department of Medicine.  (Am. Compl. ¶ 7(j).)

complained "to functionaries" of the Department of Medicine and of TJH about his exclusion from "significant promotional opportunities and lucrative job assignments and a hostile work environment because he" is not Gujarati. (Id. ¶ 7(aa).) On or about September 14, 2004, Plaintiff was informed that he was "being watched," and TJH Executive Director Marks instructed Plaintiff to quit, which he refused to do. (Id. ¶ 7(bb).) In addition, Plaintiff alleges numerous instances in which he complained to Defendants regarding patient care issues. (See id. ¶¶ 7(o)-(z), (ii).)

On or around September 23, 2004, Plaintiff received a letter from Marks informing him that the employment agreement that he entered into in Jamaica Hospital was still in effect, and forwarding him a new agreement that prohibited Plaintiff from "moonlighting" at other medical institutions. (Id. ¶ 7(cc)-(ee).) This new limitation significantly reduced Plaintiff's income. (Id. ¶ 7(ff).) On October 21, 2004, Plaintiff requested from Marks that he be permitted to "moonlight," which other attending physicians had been permitted to do. (Id. ¶ 7(gg).) On October 29, 2004, Defendants represented to Plaintiff that he had resigned. (Id. ¶ 7(hh).) On November 10, 2004, Plaintiff confronted Marks with the allegation that his "resignation" was a retaliatory pretext with which to terminate him. (Id. ¶ 7(jj).) Defendants confirmed the following day that he was still compensated by Jamaica Hospital. (Id. ¶ 7(kk).) On or about November 12, 2004, Defendants terminated Plaintiff's employment, citing a clause in his 1994 employment contract. (Id. ¶ 7(ll).)

Plaintiff alleges that he was terminated "because he is not a [Gujarati], because he vociferously complained about departures from the standard of care owed to patients, because he complained about discrimination and because defendants sought to restrain and to monopolize the practice of medicine in a certain location." (Id. ¶ 7(nn).) In his Amended Complaint,

4

Plaintiff claimed violations of the overtime requirement of the Fair Labor Standards Act

("FLSA"), 29 U.S.C. § 201 *et seq*., national origin and race discrimination and retaliation in

violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq*.,

restraint of trade in violation of the Sherman Act, 15 U.S.C. § 1, and a number of common law

and other state claims. (See Id. ¶¶ 13-22.) Plaintiff now withdraws all claims except those

arising under FLSA, Title VII, and the Sherman Act, and requests to amend the complaint to

plead discrimination claims under Title VII and Section 1981. (See Pl. Mem. Opp. Mot.

Dismiss, at 1 n.1, 12 n.3.) The court grants that request.

Defendants now move to dismiss the complaint for failure to state a claim.[3]

## II.     DISCUSSION

### A.     Standard of Review

In reviewing a motion to dismiss for failure to state a claim pursuant to Fed R. Civ. P.

12(b)(6), the court must accept all factual allegations in the complaint as true and draw all

reasonable inferences from those allegations in the light most favorable to the plaintiff. See

Albright v. Oliver, 510 U.S. 266, 268 (1994); Burnette v. Carothers, 192 F.3d 52, 56 (2d Cir.

1999). The complaint may be dismissed only if "it appears beyond doubt, even when the

complaint is liberally construed, that the plaintiff can prove no set of facts in support of his claim

which would entitle him to relief." Hoover v. Ronwin, 466 U.S. 558, 587 (1984) (citing Conley

v. Gibson, 355 U.S. 41, 45-46 (1957)). In deciding such a motion, the "issue is not whether a

---

[3] Defendants move that this action be dismissed as against Dr. William O'Connell for failure to
serve him with a copy of a complaint. (Def's' Mem. Supp. Mot. Dismiss at 2 n.1.) As Plaintiff
does not contest this issue, I grant Defendants' motion on this ground.

plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support

the claims." Bernheim v. Litt, 79 F.3d 318, 321 (2d Cir. 1996) (internal quotations omitted).

**B.      Plaintiff's Claims**

*1.          Fair Labor Standards Act*

FLSA requires payment of one and one half an employee's hourly wage for all hours

worked over forty in a week, subject to certain exceptions.  29 U.S.C. § 207(a). Defendants

argue that Plaintiff's FLSA claim must be dismissed because Plaintiff is a "learned

professional," who is exempt from FLSA's overtime requirement because he was "employed in a

bona fide . . . professional capacity[.]"  (Def's' Mem. Supp. Mot. Dismiss at 3 (citing 29 U.S.C.

§ 213(b)(1); 29 C.F.R. 541.301(a)-(c)).)

Plaintiff concedes that his employment for Defendants was that of a "learned

professional," but argues that Defendants were required to pay him overtime because he was not

a salaried employee, a requirement of Section 213(b)(1), but rather was an hourly employee.

(Pl's Mem. Opp. Def's' Mot. Dismiss at 11.)  Plaintiff bases this contention on his pay records,

which include an hourly and a weekly wage rate.  (Id.)  Accepting Plaintiff's unsworn testimony

that his pay records reflect an hourly rate,[4] Plaintiff's argument is without merit.  The critical

inquiry in considering whether an employee is salaried or hourly is not whether a pay record

indicates an hourly basis, but rather "if under his employment agreement he regularly receives

---

[4] Defendants allege that documents contained in Exhibit B of its motion are pay records for
Plaintiff, and that Exhibit B should be considered in evaluating Defendants' motion.  (Def's'
Mem. Supp. Mot. Dismiss at 3 n.2, Ex. B.)  While this court may consider documents
incorporated by reference in a motion under Fed. R. Civ. P. 12(b)(6), see Nechis v. Oxford
Health Plans, Inc., 421 F.3d 96, 100 (2d Cir. 2005), Plaintiff in his Amended Complaint does not
refer to Defendants' payment method.  I shall therefore refrain from considering Defendants'
Exhibit B.

each pay period on a weekly, or less frequent basis, *a predetermined amount* constituting all or part of his compensation, *which amount is not subject to reduction* because of variations in the quality or quantity of the work performed." 29 C.F.R. § 541.118(a) (emphasis added); see also Bongat v. Fairview Nursing Care Ctr., Inc., 341 F. Supp. 2d 181, 184 (E.D.N.Y. 2004). Plaintiff does not allege that his salary was not predetermined, or was subject to variation depending on the work performed. Therefore, his argument that he was an hourly employee is without merit, and this claim must be dismissed.

### 2. *Title VII*

Next, Defendants contend that Plaintiff's Title VII claims must be dismissed because (1) Plaintiff refused to sign an employment agreement, which forecloses suit under Title VII, and (2) Plaintiff failed to show that a similarly situated employee was treated any differently than he was based on national origin. (Def. Mem. Supp. Mot. Dismiss at 5-7.) Further, Defendants argue that Plaintiff's Title VII discrimination claim is time-barred to the extent that it alleges discriminatory conduct that occurred before June 1, 2004, more than 300 days before Plaintiff filed a complaint to the U.S. Equal Employment Opportunity Commission ("EEOC").

#### a. *Retaliation*

Defendants argue that Plaintiff's claim cannot survive because he refused to sign a reasonable employment agreement. However, Defendants' factual representation is belied by Plaintiff's Amended Complaint, in which Plaintiff alleges that on or around September 23, 2004, he was informed that an employment agreement that had been terminated after he left employment with Jamaica Hospital was newly in effect, and that in addition TJH prohibited him from "moonlighting". (Am. Compl. ¶¶ 7(cc)-(ee).) Plaintiff does not allege that he refused to abide by this requirement, but rather that he requested (unsuccessfully) that Marks permit him to

"moonlight," and that Marks subsequently informed him that he had resigned, allegedly in

retaliation for his complaints about discriminatory treatment. (Id. ¶¶ 7(gg)-(hh)), (jj).) Although

Defendants might dispute these allegations, this court is obligated to accept Plaintiff's

allegations as true under Fed. R. Civ. P. 12(b)(6) ("Rule 12"). Under Rule 12 and the liberal

pleading standards set forth in Fed. R. Civ. P. 8(a)(2), Defendants' factual assertion that Plaintiff

refused to sign an employment contract is unavailing because it is belied by the facts alleged in

the Amended Complaint, and permissible inferences therefrom. Thus, the Second Circuit case

that Defendant relies on, Jetter v. Knothe Corp., 324 F.3d 73 (2d Cir. 2003), is distinguishable,

both because it considered a motion for summary judgment under Fed. R. Civ. P. 56 and because

in that case the Plaintiff "expressed his desire to be bought out of his contract." Knothe Corp.,

324 F.3d at 76.

Defendants' second argument, that Plaintiff's Title VII claims cannot survive because

they do not sufficiently allege preferential treatment of similarly situated staff of a different

national origin, is a closer call. However, I find that Plaintiff's claim for retaliation under Title

VII survives a motion to dismiss under the liberal pleading standards of Fed. R. Civ. Pro. 8(a)(2)

("Rule 8"). In Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002), the Supreme Court held that

complaints alleging employment discrimination are subject to the same basic pleading threshold

in a motion to dismiss as all other actions save for fraud or mistake: under Rule 8, the plaintiff

must "'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which

it rests.'" Id. at 512 (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).

In his Amended Complaint, Plaintiff alleges that Defendants constructively terminated

him for his complaints that Defendants treat staff of Gujarati descent better than other medical

staff, including himself. Although Plaintiff does not allege his national origin, the allegations set

forth in the Amended Complaint give rise to the inference that he is not Gujarati. As such,

Plaintiff has placed Defendants on fair notice that he claims that he was fired in retaliation for

complaining of discrimination on the basis of national origin, i.e. because he complained that

staff from Gujarati are treated preferentially *vis à vis* staff like himself who are not Gujarati.

Hence, Plaintiff has satisfied the liberal pleading standard set forth in Rule 8 and discussed in

Swierkiewicz.

Lastly, to the extent that Defendants argue that Plaintiff's retaliation claim cannot survive

because the purported retaliatory conduct was based on complaints of discrimination that do not

themselves present cognizable Title VII claims, dismissal is not appropriate on this ground. A

Title VII claim for retaliation may proceed even where the underlying discrimination claim is

without merit so long as plaintiff had "a good faith reasonable belief that the underlying

challenged actions of the employer violated the law." Gregory v. Daly, 243 F.3d 687, 700-01

(2d Cir. 2001) (citations and quotation marks omitted). I find that Plaintiff has alleged facts

sufficient to show that he had a good faith reasonable belief that Defendants by favoring persons

of a different ethnicity than his violated anti-discrimination laws.

The unpublished district court cases cited by Defendants in support of their position that

Plaintiff's complaint must be dismissed on this basis are easily distinguishable. In George v.

N.Y. City Health & Hosp. Corp., 02-Civ.-1818, 2003 U.S. Dist. LEXIS 9817 (S.D.N.Y. June 11,

2003), the district court reconsidered an earlier dismissal of an employment discrimination

action under the stringent standards of Fed. R. Civ. P. 60(b)(6), primarily for lack of subject

matter jurisdiction. Id. at *1-*2. In Jenkins v. N.Y. City Transit Auth., 00-Civ.-6310, 2002 U.S.

Dist. LEXIS 15546 (S.D.N.Y. Aug. 21, 2002), *pro se* defendant's Title VII claim was found to

be time-barred. Id. at *7-*8. In Straker v. Metro. Transit Auth., 03-Civ.-1756, 2005 U.S. Dist.

LEXIS 30956 (E.D.N.Y. Dec. 5, 2005), there was no Title VII claim asserted. In <u>Valle v. Bally Total Fitness</u>, 01-Civ.-11614, 2003 U.S. Dist. LEXIS 17093 (S.D.N.Y. Sept. 30, 2003), unlike in this case, plaintiff failed "to incorporate *any* factual allegations that would indicate how his race, gender, age, or national origin played a role in" the employer's decision to terminate his employment. <u>Id.</u> at *8 (emphasis supplied). Finally, in <u>Marshall v. Nat'l Ass'n of Letter Carriers Br. 36</u>, 03-Civ.-1361, 2003 U.S. Dist. LEXIS 19918 (S.D.N.Y. Nov. 7, 2003), the judge found that *pro se* plaintiff did assert a claim under Title VII, but then held that this claim was barred by principles of claim and issue preclusion. <u>Id.</u> at *19-*27. Given that Defendants have failed to cite any persuasive authority that would permit this court to dismiss Plaintiff's Title VII retaliation claim, this court denies their motion to dismiss this claim.

      *b.*       *Discrimination and Individual Liability*

On the other hand, Plaintiff concedes that he fails to state a claim under Title VII for discrimination, and that Title VII does not support a claim for individual liability. (Pl. Mem. Opp. Mot. Dismiss at 12 n.3.) Plaintiff requests to amend the Amended Complaint to clarify his discrimination claims under Title VII and Section 1981 as to the individual defendants. (<u>Id.</u>) As Plaintiff has amended his Complaint, and Defendants do not consent to Plaintiff amending the Amended Complaint a second time (<u>see</u> Def. Mem. Supp. Mot. Dismiss at 8-9), Plaintiff may amend his complaint again only by leave of court, which "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). The decision to grant a request for leave to amend a complaint is within the discretion of the district court. <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962); <u>Ching v. United States</u>, 298 F.3d 174, 180 (2d Cir. 2002). "Leave to amend should be freely granted, but the district court has the discretion to deny leave if there is a good reason for it, such as futility, bad faith, undue delay, or undue prejudice to the opposing party." <u>Min Jin v. Metro. Life Ins.</u>

<u>Co.</u>, 310 F.3d 84, 101 (2d Cir. 2002). Defendants argue that amending the complaint would be

futile because Plaintiff's claims are legally deficient. (Def's' Mem. Supp. Mot. Dismiss at 8-9.)

Contrary to Defendants' position, this court finds that Plaintiff has stated a Title VII retaliation

claim. Furthermore, this court is not prepared at this juncture, without knowing the precise basis

of Plaintiff's national origin discrimination claim, to declare the claim to be without merit. I

therefore grant Plaintiff's motion, and direct Plaintiff to file an amended complaint within thirty

(30) days of the issuance of this Memorandum and Order.

However, I partially grant Defendants' motion to dismiss Plaintiff's Title VII

discrimination claim on the ground that it is time-barred.[5] For a Title VII discrimination claim to

survive, the plaintiff must show that he or she filed a charge with the EEOC up to 300 days after

the unlawful practice happened. <u>AMTRAK v. Morgan</u>, 536 U.S. 101, 109-10 (2d Cir. 2002).

Plaintiff does not contest that he filed a complaint with the EEOC on March 28, 2005, based on

alleged discriminatory conduct that happened before and after June 1, 2004. I therefore hold

time-barred the portion of Plaintiff's discrimination claim that alleges discriminatory conduct

before June 1, 2004.[6]

### 3. *Sherman Act*

---

[5] Plaintiff's Title VII retaliation claim accrued on November 12, 2004, the day he was allegedly pretextually terminated. As this claim arose well within the requisite statute of limitations, Plaintiff's retaliation claim is not time-barred.

[6] Plaintiff's allegations of discriminatory treatment throughout his employment remain relevant to the case at bar. Under the "continuing violation" doctrine, a plaintiff may allege facts outside the limitations period as additional proof of a discrimination claim. <u>See</u>, e.g., <u>Fitzgerald v. Henderson</u>, 251 F.3d 345, 359 (2d Cir. 2001) ("Under [the continuing violation] doctrine, if a plaintiff has experienced a continuous practice and policy of discrimination, . . . the commencement of the [Title VII] statute of limitations period may be delayed until the last discriminatory act in furtherance of it.") (internal quotations omitted), <u>cert.</u> <u>denied</u>, 536 U.S. 922 (2002).

Plaintiff's remaining claim is that Defendants' prohibition on his "moonlighting" violated the Sherman Act because it placed "unreasonable burdens on the free and uninterrupted flow of commerce." (Pl. Mem. Opp. Mot. Dismiss 15.) Defendants argue that Plaintiff lacks standing to assert a Sherman Act claim. (Def. Mem. Supp. Mot. Dismiss 7-8.)

It is "well settled that in order to have standing to prosecute private antitrust claims, plaintiffs must show more than that the defendants' conduct caused them an injury." Balaklaw v. Lovell, 14 F.3d 793, 796 (2d Cir. 1994). "Plaintiffs must prove antitrust injury, which is to say injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful. The injury should reflect the anticompetitive effect either of the violation or of anticompetitive acts made possible by the violation." Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc., 429 U.S. 477, 489 (1977). This standing requirement reflects Congress's intent that "the antitrust laws . . . were enacted for 'the protection of competition, not competitors.'" Brunswick, 429 U.S. at 488 (quoting Brown Shoe v. United States, 370 U.S. 294, 320 (1962)).

With these principles in mind, it is clear that Plaintiff has failed to assert an antitrust claim. The crux of Plaintiff's Sherman Act claim is that the Defendants impermissibly restrained trade by prohibiting him from "moonlighting." However, Plaintiff has not alleged that Defendants' prohibition on "moonlighting" has resulted in lower quality medical services in the area or has prevented other medical staff from competing for these medical services. Indeed, Plaintiff's allegation that the Defendants' prohibition on "moonlighting" was aimed individually at him in retaliation for complaints of discrimination strongly suggests that whatever impact the prohibition had on Plaintiff, there was no wider impact or intended effect on commerce. Although the parties have not cited any directly relevant Second Circuit precedent regarding

hospital limitations on the professional practices of its medical staff, and this court is not aware of any, this court is persuaded that Defendants' alleged restraint of Plaintiff's "moonlighting" does not state an "antitrust injury" or harm to competition generally inasmuch as the limitation imposed does not suggest a sacrifice of "quality medical services at competitive prices." Purgess v. Sharrock, 806 F. Supp. 1102, 1107 (S.D.N.Y. 1992) (citing Todorov v. DCH Healthcare Authority, 921 F.2d 1438, 1448 (11th Cir. 1991); Robles v. Humana Hospital Cartersville, 785 F. Supp. 989, 999 (N.D. Ga. 1992); Anesthesia Advantage, Inc. v. The Metz Group, 759 F. Supp. 638, 646 (D. Co. 1991)).

The Supreme Court case cited by Plaintiff in support of his claim that a physician who is subject to a practice limitation by a medical establishment has standing to bring a Sherman Act claim, Summit Health v. Pinhas, 500 U.S. 322, 326 (1991), is not directly relevant to the instant motion. Summit Health involved a hospital policy requiring surgeons to perform eye surgeries with an assistant surgeon, which considerably increased the cost of performing the medical service and limited the number of practices that could perform the procedure. Id. at 326. The Supreme Court considered whether the plaintiff pled a sufficient amount of interstate commerce to invoke the protections of the Sherman Act, not whether the plaintiff had standing. Id. at 330. Moreover, unlike the plaintiff in Summit Health, there is no allegation in the instant motion that Defendants' actions had an impact on the market for medical services in the relevant area.

I therefore GRANT Defendants' motion on this ground and dismiss Plaintiff's antitrust claim.

**III.   CONCLUSION**

Defendants' motion to dismiss as to Plaintiff's FLSA and Sherman Act claims are

GRANTED, and their motion to dismiss Plaintiff's Title VII retaliation claim is DENIED.

Defendants' motion to dismiss Plaintiff's Title VII discrimination claim is DENIED, except to

the extent that I GRANT their motion to find Plaintiff's Title VII discrimination claim partially

time-barred.  Furthermore, this action is dismissed as against Dr. William O'Connell for failure

to serve.  Plaintiff's motion to amend his complaint to allege discrimination in violation of Title

VII and Section 1981 is GRANTED.

SO ORDERED.

Dated:  September__, 2006                                    /s/ Nicholas G. Garaufis__
Brooklyn, NY                                                       NICHOLAS G. GARAUFIS
                                                                          United States District Judge